IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| ADRIEL DEMETRIO FLORES, III, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO. |
| | ) | 1:15-CV-038-BL |
| LORIE DAVIS, Director, | ) | |
| Texas Department of Criminal Justice, | ) | |
| Correctional Institutions Division, | ) | |
| | ) | |
| Respondent. | ) | Assigned to U.S. Magistrate Judge |

**REPORT AND RECOMMENDATION**

This case has been assigned to the United States Magistrate Judge under Amended Special Order No. 3-301, but as all parties have not filed a consent to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), the undersigned magistrate judge issues this report and recommendation pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. Afer review and consideration of the § 2254 petition and the applicable law, the Court should deny the petition on the merits.

**I. FACTUAL AND PROCEDURAL HISTORY**

Petitioner Adriel Demetrio Flores, III, an inmate currently incarcerated in the Texas Department of Criminal Justice, acting *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on February 24, 2015. (Petition (doc. 1).) In response to a Court order, the respondent filed an answer to Petitioner's § 2254 petition, and Petitioner then filed a reply. (Docs. 7, 8.) The respondent also recently filed the copies of the state court records. (Docs. 14,15.)

Flores challenges his judgment of conviction in the 42nd District Court of Taylor County,

Texas, in cause number 23764A. (Clerk's Record (CR[1]), Doc. No. 14-1, at 47-48.) Flores was charged by indictment for murder, alleged in two paragraphs. CR, Doc. 14-1, at 5.) Flores entered a plea of not guilty.(CR, Doc. 14-1, at 44; 5 Reporter's Record (RR[2]) 5–6, Doc. No. 14-16, at 5-6.) A Texas jury found him guilty of murder as charged in the first paragraph in the indictment and, after rejecting finding Flores acted out of sudden passion, assessed his sentence on November 18, 2010, at 55 years of imprisonment. (CR Doc. 14-1, at 47 (Judgment), 35 (guilty verdict form), 31-42 (verdict forms for special issue and sentence).)

The Eleventh Court of Appeals for Texas affirmed Flores's conviction. *Flores, III v. State*, Cause No. 11–10–00352–CR, 2012 WL 5951977 (Tex. App.— Eastland Nov. 29, 2012, writ ref'd.) The state appellate court recounted the pertinent case facts as follows:

> The facts established that appellant drove to the victim's girlfriend's house with his friend, Abel Alcala. The two men were supposed to meet another person, Carlos Rodriquez. The victim, [Lazaro] Carrillo, came out of the house and, after asking who the two men were and why they were there, told appellant and Alcala that Carlos was no longer at the house. Carrillo told them they should leave. Alcala called Carlos to find out where he was and to see if he would return to the house. Carrillo spoke with Carlos and then tossed Alcala's phone back into appellant's car, striking appellant. Appellant and Carrillo had a verbal altercation. Carrillo reached into the car and punched appellant. Appellant testified that he saw something shiny in Carrillo's hand as Carrillo came in for another punch. Afraid for his life, he shot Carrillo while still seated in the driver's seat. Dr. Nizam Peerwani, the forensic pathologist who performed the autopsy, testified that the angle of the gunshot wound was downward and slightly perpendicular. The medical evidence does not support appellant's testimony that he shot Carrilo while seated in the driver's seat. Dr. Peerwani testified that the distance was not at close range and that, from the angle of the gunshot wound, the bullet was fired "straight head on." [Carrillo died as a result of his wounds.]

---

[1] "CR" refers to the Clerk's Record of papers filed in the trial court. Those papers are filed on the docket of this case at ECF Doc. No. 14-1 through 14-3. The Court will cite to the ECF page numbers assigned to the scanned copy of this record.

[2] "RR" refers to the statement of facts of the jury trial in the Reporter's Record, preceded by the volume number and followed by the page number. The Court will cite to the ECF page numbers assigned to the scanned copies of this record.

*Flores*, 2012 WL 5951977 at *3–4.

The Texas Court of Criminal Appeals ("TXCCA") refused Flores's petition for discretionary review. *Flores v. State*, No. PD-1742-12 (Tex. Crim. App. April 13, 2013), *available at* http.search.txcourts.gov/Case.aspx?cn=PD-1742-12&coa=cosca&p=1. Although he sought review in the Supreme Court, his petition for writ of certiorari was denied. *Flores v. Texas*, 134 S. Ct. 277 (2013). Flores subsequently challenged his conviction through an application for state writ of habeas corpus, which the CCA denied without written order on the findings of the trial court, without a hearing. *Ex parte Flores*, WR-82,282-01, at cover.[3] Flores then filed the instant § 2254 petition.

## II. ISSUES

Petitioner raises the following grounds for relief:

1. "The trial court violated [his] sixth amendment right to counsel where the trial court denied [him] counsel at a critical stage of the proceedings," namely when the court denied Flores "the introduction of character evidence that was admiss[i]ble to prove his defensive theory at trial;"

2. The State erred by "violat[ing] Petitioner's fourteenth amendment right to due process where the State withheld exculpatory evidence," namely in "only nam[ing] Jerry DeLeon" after he had requested "names of people the [complainant] had problems with;"

3. "Trial counsel violated Petitioner's sixth amendment right to effective assistance where counsel failed to investigate and subpoena witness [Michael Santana] at trial;" and

4. "Trial counsel violated Petitioner's sixth amendment right to effective assistance where counsel advised Petitioner to reject a plea offer that [Flores] would have accepted."

(Doc. 1, at 6-7.)

## III. AEDPA STANDARD OF REVIEW

A § 2254 habeas petition from a state prisoner is governed by the heightened standards of

---

[3] The Respondent cited the state habeas corpus record as "SHCR." The compilation of those documents is scanned on this Court's docket at ECF No. 15-6. The Court will cite to the ECF page numbers.

3

review enacted in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217. The AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2) (West 2006). "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002) (citations omitted). Thus, § 2254(d)'s "highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Viscotti,* 537 U.S. 19, 24 (2002) (*per curiam*) (internal quotation and marks omitted).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001); *see also Holland v. Anderson,* 583 F.3d 267, 271 (5th Cir. 2009) ("This 'deference is mandated both for questions of law and for mixed questions of law and fact'") (quoting *Foster v. Quarterman,* 466 F.3d 359, 365 (5th Cir. 2006)). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court

arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) (citations omitted). When the Texas court of Criminal Appeals denies relief in a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Ex parte Torres,* 943 S.W. 2d 469, 472 (Tex. Crim. App. 1997); *see generally*

*Harrington v. Richter,* 562 U.S. 86, 98 (2011) ( "There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning") (citations omitted).

The Supreme Court recently recited the applicable standards of review in *Harrington v. Richter:*

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable... If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a 'guard against *extreme malfunctions* in the state criminal justice systems,' *not a substitute for ordinary error correction through appeal.* As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an **787 error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington,* 562 U.S. at 102-03 (emphasis added) (internal citations omitted).

Flores contends in this § 2254 petition that he was (1) denied the admission of testimonial character evidence that would have proved his self-defense theory at trial, (2) the State violated his right to due process of law when it withheld exculpatory evidence, (3) he received ineffective assistance of counsel by counsel's failure to investigate and subpoena a particular witness for trial, and (4) he received ineffective assistance when his counsel failed to advise him to accept a plea offer. (Doc. 1, at 6-7.) Between the grounds presented to the Eleventh Court of Appeals, and rejected there and on his petition for discretionary review, and in the virtually same four grounds Flores presented in his state application for writ of habeas corpus, that was denied by the TXCCA

on the findings of the trial court, all of Flores's claims were previously reviewed and resolved by the Texas Courts. *See Flores,* 2012 WL 5951977, at *1-4; *See Ex parte Flores,* No. 82,282-01, Doc. No. 15-6, at 33-39, 46-54, 57-60. But in his § 2254 form petition in this matter, Flores did not even attempt to make a showing that the adjudication of the merits of his grounds for relief in state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1) and (2)(West 2006). Likewise, in his traverse, although he again argues of the state court's "erroneous ruling"on ground one, the prosecution's "suppression of evidence" on ground two, and counsel's deficiencies on grounds three and four, he never meets his burden to address and overcome the standards enunciated above. (Doc. 11, at 4-8.) As Flores failed to properly address and show that the state court's resolution of his claims violated the applicable standards set out in § 2254(d)(1) and (2), he did not satisfy his burden of proof, and this § 2254 petition must be denied for this reason alone.

Alternatively, Flores's grounds for relief will be reviewed in detail.

### IV. CLAIMS OF TRIAL COURT AND PROSECUTORIAL ERROR

A. Trial Court Error.

In his first ground for relief, although Flores words an allegation that he was denied counsel at a critical stage of the proceedings, he bases that claim on a complaint that "[t]he trial court denied [him] the introduction of character evidence that was admiss[i]ble to prove his defensive theory at trial." (Doc. 1, at 6.) This ground must be denied for several reasons.

The trial court's evidentiary rulings are matters of state law which are not subject to re-examination by the federal courts. It is not "the province of a federal habeas court to reexamine state

court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Allegations that state law was violated do not constitute an independent basis for federal habeas relief. *Mayabb v. Johnson*, 168 F.3d 863, 869-70 (5th Cir. 1999); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998). Moreover, it is well settled that federal courts do not function to review a state's interpretation of its own laws and instead will defer to the state courts on such matters. *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). Here, the state court of appeals applied Texas law to this issue. *Flores*, 2012 WL 5951977 at 1-2. Because this determination of state law is binding on this court, it forecloses Flores's contention that the trial court erred in violation of Texas law.

But, "a federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling also violates a specific federal constitutional right or renders the petitioner's trial fundamentally unfair." *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997); *see Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984) (trial court error must do more than merely affect the verdict; it must render the trial as a whole fundamentally unfair). The test applied to determine whether an error by the trial court rendered the trial fundamentally unfair is if there is a reasonable probability that the verdict would be different had the trial been conducted properly. *See Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988); *Fuller v. Johnson*, 158 F.3d 903, 908 (5th Cir. 1998) (inquiry is whether the alleged error rendered the trial as a whole fundamentally unfair, thus denying the defendant due process).

The Supreme Court has recognized that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the

conviction." *Chapman v. California*, 386 U.S. 18, 22 (1967). Further, the Court has held that on federal habeas review of state court convictions, a federal harmless error standard applies. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Billiot v. Puckett*, 135 F.3d 311, 318 (5th Cir. 1998). The test is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on 'trial error' unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637. This is less onerous than the Chapman standard, which requires proof that a federal constitutional error was harmless beyond a reasonable doubt. *Brecht*, 507 U.S. at 622-23.

Here, the TXCCA rejected Flores's claim raised in both his petition for discretionary review and his state habeas application ground one. *Flores*, PDR No. 1742-12; *Ex parte Flores*, No. 82,282, Doc. 15-6, at 33, 57. In the state habeas proceeding, the TXCCA adopted the state habeas court's finding that Flores's claim was raised and resolved on direct appeal. *Ex parte Flores*, No. 82,282, Doc. 15-6, at 57.

Because the Eleventh District Court of Appeals issued "the last reasoned opinion" on the matter, the intermediate appellate decision should be reviewed to determine whether the denial of this claim was contrary to, or an unreasonable application of, federal law. *See Ylst v. Nunnemaker*, 501 US 797, 803 (1991). In denying Flores's claim of trial court error—if viewed as a complaint of the violation of a constitutional right— the Eleventh Court of Appeals of Texas stated:

> Appellant relies on the proposition that a defendant has a constitutional right to call witnesses and offer evidence in his own behalf. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). However, constitutional error is not committed whenever a trial court erroneously excludes defensive evidence. *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). There is no constitutional right to present favorable

evidence. *United States v. Scheffer*, 523 U.S. 303, 316, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). The erroneous exclusion of evidence rises to the level of constitutional error only when the excluded evidence "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Walters*, 247 S.W.3d at 219. "That [appellant] was unable to . . . present his case to the extent and in the form he desired is not prejudicial where, as here, he was not prevented from presenting the substance of his defense to the jury." *Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002); *see Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir.2001) (trial court's refusal to admit evidence of the victim's prior violence was not constitutional error under *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). Looking at the record as a whole, appellant was not precluded from presenting his defense. Therefore, we must analyze his claim under Texas Rule of Appellate Procedure 44.2(b). Tex. R. App. P. 44.2(b).

Under Rule 44.2(b), because constitutional error was not committed, the error must be disregarded unless a substantial right was affected. Exclusion of evidence does not result in reversible error unless the exclusion affects a substantial right of the accused. Rule 44.2(b); *Walters*, 247 S.W.3d at 219; *Breeding v. State*, 809 S.W.2d 661, 663 (Tex. App.–Amarillo 1991, pet. ref'd). We will not overturn a criminal conviction for nonconstitutional error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson*, 967 S.W.2d at 417. Important factors in this determination are "the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003) (quoting *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002)).

. . . The jury was properly instructed to sustain appellant's claim of self-defense if it found or had a reasonable doubt that appellant reasonably believed deadly force was immediately necessary to protect himself against Carrillo's use or attempted use of unlawful deadly force. Appellant's testimony waivered on the issue of whether he reasonably believed he was in danger. In the presence of the jury, appellant testified that the victim was angry and told him to leave. Appellant also testified that he was scared of the victim and that he thought the victim had something shiny in his hand. Appellant's trial counsel elicited testimony that the victim had a bad reputation and was the initial aggressor when he punched appellant in the face through appellant's open car window. However, appellant contradicted himself when he testified that he had never had a problem with anyone in the house, that he had no problem with the victim, and that he was not afraid when he arrived at the house.

Equally important, the facts do not show an act of aggression by Carrillo that would justify appellant's use of deadly force. There is no evidence that the victim was armed or that he used deadly force during his confrontation with appellant. The credibility of appellant's testimony was seriously undermined by the physical evidence. Forensic testimony revealed that the shot was not fired at close range and that the trajectory of the bullet was not the angle expected if appellant was sitting in

his car and the victim was leaning in the window. Alcala testified that it was the victim's fault but that he did not think it was right to shoot someone that punches you. Alcala further testified that, under those circumstances, he would not have shot Carrillo. Indeed, the admission of the contested testimony would not have aided appellant's self-defense theory. In the excluded testimony, appellant testified to bringing a gun along when he admittedly had no reason to believe the victim would be present. Then, when he reached the house where the victim was, he remained there after the victim told him to leave.

We do not find that appellant was harmed by the exclusion of the evidence. The specific misconduct of the victim that was excluded—that appellant had heard Carrillo had shot someone— does no more than add to existing proof that the victim had a bad reputation and that appellant was afraid of him. *See United States v. Willie*, 941 F.2d 1384, 1398–99 (10th Cir. 1991) (The exclusion of hearsay materials offered to show defendant's state of mind was harmless). Consequently, the exclusion of additional evidence of the victim's criminal history and reputation would be harmless in any event. The jury was charged on self-defense. A review of the record demonstrates that appellant was able to present his defense; the jury chose not to accept it. We, therefore, conclude that any error in failing to admit appellant's proffered testimony did not affect his substantial rights. We overrule appellant's second, third, and fourth issues.

*Flores,* 2012 WL 5951977 at *2–4.

Flores has failed to provide any evidence to overcome the factual determinations made by the state court. See 28 U.S.C. § 2254(e). He has also failed to demonstrate that the state court's decision was contrary to or involved the unreasonable application of federal law, or that the state court's decision was based upon an unreasonable determination in light of the facts before the court. Flores's first ground one claim of trial court error fails to merit relief and should be denied.

B. Claim of Prosecutorial Error.

Flores alleges that the State erred when it "withheld exculpatory evidence" by "only nam[ing] Jerry DeLeon" in response to Flores's request for the "names of people the [complainant] had problems with." (Doc. 1, at 6.) This claims fails to merit habeas relief.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused "violates due process where the evidence is

material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. To establish a Brady violation, a defendant must prove that: (1) the evidence was favorable to the defendant, either because it was exculpatory or because it has impeachment value; (2) the evidence was withheld or suppressed by the State, either willfully or inadvertently, and (3) the evidence was material such that prejudice ensued. *See Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Here, Flores's complaint hardly approaches meeting the requirements to demonstrate a *Brady* violation occurred: he fails to identify—let alone prove—that the complainant actually "had problems with" his friend Santana; that the State "willfully or inadvertently" withheld or suppressed evidence related to Santana; and that whatever evidence that would have purportedly been presented through Saldana—whom Flores fails to demonstrate would have been available to testify or would have testified as Flores alleges—was material. *Id.* Thus, Flores's *Brady* claim is not meritorious and must be dismissed as conclusory. *See Ross v. Estelle*, 694 F.2d 1008, 1011–12 (5th Cir. 1983) ( "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value"); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) ("Mere conclusory statements do not raise a constitutional issue in a habeas case.").

Moreover, Flores has failed to provide any evidence to overcome the factual determinations made by the state habeas court and adopted by the TXCCA, or the state habeas court's conclusions of law relied upon by the TXCCA, in denying Flores's claim:

> 2. [Flores] alleges the State withheld exculpatory evidence in that the victim/complainant shot one Michael Santana. The attorney for the applicant states in response to ground two and three that he could find no evidence of a shooting of Michael Santana by the victim/complainant. The attorney for the State advised said

12

> trial attorney that there was no "indication" that Michael Santana was ever "shot" or "shot at" by complainant. Trial attorney could not locate Michael Santana and believed the incident was fabricated. Also, whether the incident was true or not made no difference as the trial court denied the applicant's request to testify that he had heard of such an incident. This issue has been resolved against the Applicant by the Court of Appeals.

*Ex parte Flores,* No. 82,282, DOC. 15-6, at 57 (referencing trial counsel's affidavit (Doc. 15-6, at 59–60)). Flores has also failed to demonstrate that the state court's decision was contrary to or involved the unreasonable application of federal law, or that the state court's decision was based upon an unreasonable determination in light of the facts before the court. Flores's claim of prosecutorial error should be denied.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Flores complains that he was denied effective assistance of counsel on two grounds, that counsel failed to investigate and subpoena a witness for trial, and counsel advised him to reject a plea offer. (Doc. 1, at 7.)

A. Applicable Standard of Review

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. To successfully state a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins,* 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland,* 466

U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct.1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 690)). This standard not only gives trial counsel the benefit of the doubt; it affirmatively entertains the range of possible reasons he may have had for proceeding as he did. *Id.* at 1407.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

The Supreme Court recently set out in *Harrington* the standard under which a federal court is to consider an ineffective-assistance-of-counsel claim raised in a federal habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

14

*Harrington*, 562 U.S. at 101 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)). Accordingly, it is necessary only to determine whether the state courts' rejection of Petitioner's ineffective-assistance claims was contrary to or an objectively unreasonable application of *Strickland. Bell,* 535 U.S. at 698-99; *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003). This review is "doubly deferential" and gives both the state court and the defense attorney the benefit of the doubt. *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013).

As an initial matter, Flores fails to demonstrate that the CCA acted unreasonably in implicitly finding that he failed to demonstrate he was prejudiced by trial actions or failure to take certain actions. S*ee generally Valdez*, 274 F.3d at 948 n.11 (presumption of correctness to both explicit findings of fact and implicit finding necessary to the resolution of the claim); *Harrington,* 562 U.S. at 101 (unreasonable application of federal law different from incorrect application, and "[a] State court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself"). The Court will address the claims in more detail.

B. Failure to Investigate and Subpeona Michael Santana as a Witness.

Flores alleges that trial counsel was ineffective for failing to investigate and call Michael Santana as a witness. But counsel simply "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. And, in assessing unreasonableness, a heavy measure of deference must be applied to counsel's judgments. *Id.*

Whether counsel's investigation was reasonable depends in part on the information supplied by the defendant. *Ransom v. Johnson*, 126 F.3d 176, 723 (5th Cir. 1997) (citing *McCoy v. Lynaugh*, 874 F.2d 954, 964 (5th Cir.1989)). "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would

have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citations omitted); *see also United States v. Lewis*, 786 F.2d 1278, 1283 (5th Cir. 1986) ("[s]ince Lewis has not pointed out any evidence which would have been produced by a more thorough investigation, much less evidence that would be sufficient to undermine confidence in the outcome of trial, no prejudice has been shown").

But counsel is "not required to pursue every path until it bears fruit or until all conceivable hope withers." *Lovett v. Florida*, 627 F.2d 706, 708 (5th Cir. 1980). "When assessing the reasonableness of an attorney's investigation, we must 'consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.'" *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing Wiggins v. Smith. 539 U.S. 521, 537 (2003)).

Furthermore, "complaints about uncalled witnesses are not favored in federal habeas corpus proceedings because presentation of testimonial evidence based on allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir 1978). Additionally, the decision to not call certain witnesses may be a matter of trial strategy, considering all facts and circumstances. *Cotton v. Cockrell*, 343 F.3d 746, 753 (5th Cir. 2003). And in the context of an uncalled witness, for Flores to demonstrate *Strickland* prejudice, he "must show not only that the testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th cir. 2002) (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).

A liberal reading of Flores's first ground of ineffective assistance is that if counsel had properly investigated and developed the testimony of Santana, it would have better supported a self-defense argument. (Doc. 1, at 6,7.) But Flores fails to provide any evidence to demonstrate what

information he provided to his attorney that would have aided an investigation into locating Santana. (Doc. 1, at 7). Similarly, Flores fails to demonstrate that Santana would have testified favorably on his behalf, or that Santana desired and was available to testify. Thus, Flores cannot demonstrate that counsel's purported failure to investigate or call Santana as a witness was deficient or would have resulted in a different result of his trial proceedings.

Additionally, in response to Flores's presentment of this claim in the state habeas proceedings, his trial counsel provided the following:

> I was unable to locate Michael Santana and did not believe subpoenaing a witness that could not be found was a good strategy because it would likely result in the State locating the witness before the defense. I viewed the State finding the witness first as a significant problem for the Defense if the story of the shooting was untrue, which I believed it was. I believed that if the shooting incident was untrue and the State located Michael Santana first that the State might have been allowed to present an argument that the Defendant was desperately trying to fabricate defenses.
>
> More significantly, I believed that evidence that Lazaro Carillo shot Michael Santana could be introduced into evidence regardless of whether or not Michael Santana was found because the evidence was relevant only to Adriel Flore[s]'s subjective state of mind at the time of the shooting. I believed and still believe that the relevant legal issue was not whether Lazaro Carillo shot Michael Santana, but whether or not Adriel Flore[s] believed he did and[,] as a result[,] feared death or serious bodily injury on the night he shot Lazaro Carillo. I believe the trial court should have allowed Adriel Flore[s] to testify about the alleged shooting to show fear, but the testimony was not allowed.

Doc. 15-6, at 59. The TXCCA denied Flores's claim upon the findings of the state habeas court, which included finding: "Ground Three: The trial attorney investigated the incident but could find no evidence of the complainant shooting Michael Santana. The trial attorney could not locate Michael Santana and believed the incident was fabricated by Applicant." Doc. 15-6, at 57. Also, since the state habeas court also indicated it based its findings upon trial counsel's affidavit, and the TXCCA adopted the habeas court's findings in denying Flores's application, the TXCCA also implicitly found trial counsel was credible. Doc. 15-6, at 58. Given Flores's inability to demonstrate

17

that trial counsel's strategy was one that no reasonable attorney would have presented, Flores fails to demonstrate trial counsel was deficient or that his trial proceedings would have differed, but for trial counsel's purported inaction. *See Cotton*, 343 F.3d at 753.

Again, Flores has failed to overcome the presumption of correctness afforded to the above—as well as the implied—factual determinations made by the state courts, upon which the CCA's denial of Flores's claims rested. And, as noted above, Flores has also failed to demonstrate that the state court's decision was contrary to or involved the unreasonable application of federal law, or that the state court's decision was based upon an unreasonable determination in light of the facts before the court. Flores's first ineffective assistance ground should be denied.

C. Rejection of Plea Offer

In his final ground, Flores alleges that trial counsel erroneously advised him not to accept the State's plea offer, and that trial counsel admitted in the state habeas proceedings that "[counsel] failed to advise him completely." (Doc. 1, at 7.) But Flores fails to present any evidence to support his claims that trial counsel failed to convey that offer to him. *See id.* An unsupported assertion of ineffective assistance cannot serve to support the granting of habeas relief and thus should be dismissed as conclusory. *Ross*, 694 F.2d at 1011–12; *Schlang*, 691 F.2d at 799.

Moreover, Flores has failed to rebut the presumption of correctness afforded the TXCCA's findings of fact, which were adopted from the state habeas court based upon the affidavit of trial counsel, provided in Flores's state habeas proceedings:

> Trial counsel attested that he "advised Adriel Flore[s] that the plea offer of 20 years was a good offer," and "did not advise him to accept or reject the plea offer. Adriel Flore[s] was adamant in rejecting the plea offer and the State never reduced the plea offer below twenty years. Adriel Flore[s] never gave [him] permission to accept a plea offer to any amount of time and the offer of twenty years was never revoked by the State."

Doc. 15-6, at 60. Additionally, the state habeas court entered its finding of facts and conclusions of

law—which were adopted and relied upon the TXCCA in its rejection of Flores's claim—which included implicitly finding trial counsel was credible, as the court cited trial counsel's denial of this ground and Flores's firm rejection of the State's plea offer. Doc. 15-6, at 57. Again, Flores has failed to overcome the presumption of correctness afforded to this resolution—as well as the implied—factual determinations made by the state court, upon which the TXCCA's denial of Flores's claims rested. In sum, as noted above, Flores fails to demonstrate the state court's denial of this last ineffective assistance ground was contrary to or involved the unreasonable application of federal law, or was based upon an unreasonable determination of facts in light of the record before the state court.

## VI. RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition for writ of habeas corpus under § 2254 be **DENIED**.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.

Any party may object to this Report and Recommendation. A party who objects to any part of this Report and Recommendation must file specific written objections within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and identify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. The failure to file specific written objections will bar the aggrieved party from attacking on appeal the factual findings, legal conclusions, and recommendation set forth by the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile*

*Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 631(b)(1) (extending the time to file objections from ten to fourteen days), *as recognized in ACS Recovery Servs., Inc. V. Griffin*, 676 F.3d 512, 521 n. 5 (5th Cir. 2012).

SO ORDERED.

Signed October 24, 2016.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE